**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 11-cv-02300-CMA

MICHAEL A. ZELLER,

    Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

    Defendant.

---

**ORDER AFFIRMING DENIAL OF SOCIAL SECURITY BENEFITS**

---

This matter is before the Court on Plaintiff Michael A. Zeller's appeal of the Commissioner's June 22, 2010 decision denying his claim for Disability Insurance Benefits pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401-33, and for Supplemental Security Income pursuant to Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-83.  Jurisdiction is proper under 42 U.S.C. § 405(g).

## I. BACKGROUND

Plaintiff was born on June 15, 1964, and was 42 years old on his alleged disability onset date of August 25, 2006.  Plaintiff is a college graduate with a degree in music, is able to communicate in English, and has past relevant work as: a pawnbroker clerk, pawn shop assistant manager, and financial route collections clerk – jobs done at the semi-skilled or skilled levels.  (AR at 19, 42-43.)[1]

---

[1]  Citations to the Social Security Administrative Record, which is found at Doc. # 5, will be to "AR" followed by the relevant page number(s).

Plaintiff applied for Title II Disability Insurance Benefits on August 9, 2007, and for Title XVI Supplemental Security Income on August 28, 2007, alleging disability due to post traumatic stress disorder ("PTSD"), depression, heart disease, and sleep apnea, in addition to pain in his low back and legs. (AR at 223.) He asserted that he had been disabled since August 25, 2006. (AR at 223.) Plaintiff's claims were denied initially on February 20, 2008. (AR at 80-81.) He requested a hearing with an Administrative Law Judge ("ALJ") (AR at 88-89), which was held on May 11, 2010 (AR at 36-79). At the hearing, Plaintiff was represented by counsel. (AR at 36.) Plaintiff testified, as did a Vocational Expert ("VE").

On June 22, 2010, the ALJ issued a decision, finding that Plaintiff was not disabled at any time from August 25, 2006, through the date of her decision. (AR at 20.) In applying the five-step sequential evaluation process outlined in 20 C.F.R. § 404.1520 to determine whether Plaintiff was disabled, the ALJ determined that:

1. Plaintiff had not engaged in substantial gainful activity between August 25, 2006, and the date of her decision [Step 1];

2. Plaintiff had the following severe impairments: depression, PTSD, sleep apnea, and degenerative disc disease of the cervical and lumbar spine [Step 2];

3. Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 [Step 3];

4. Plaintiff had the residual functional capacity ("RFC") to perform a range of medium work as defined in 20 C.F.R. §§ 404.1567(c)[2];

---

[2] The ALJ specified the limits as: "lifting [and] carrying up to 50 pounds occasionally, and up to 25 pounds frequently; pushing and pulling with the upper and lower extremities within the aforementioned weight restrictions; sitting and standing/walking for up to 6 hours each in a

2

   5. Plaintiff was unable to perform any past relevant work [Step 4]; and

   6. Given Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as: mail clerk, marker,[3] and garment sorter. (AR at 13-19.) [Step 5].

Thereafter, Plaintiff timely filed a request with the Appeals Council for review, which the Council denied on July 19, 2011. (AR at 1.)

On August 31, 2011, Plaintiff filed a Complaint, seeking judicial review of the denial of Social Security Benefits. (Doc. # 1.) The Social Security Administrative Record was filed with the Court on November 15, 2011. (Doc. # 5.) On February 9, 2012, Plaintiff filed his Opening Brief. (Doc. # 11.) Defendant, the Commissioner of Social Security, responded on March 14, 2012 (Doc. # 12), and Plaintiff replied on March 29, 2012 (Doc. # 13).

In his appeal, Plaintiff asserts four arguments in support of his contention that the ALJ committed legal errors and that her decision was not supported by substantial evidence. (Doc. # 11 at 11.) Specifically, Plaintiff argues that the ALJ erred by: (1) failing to consider all of Plaintiff's allegedly severe mental impairments; (2) failing

---

regular 8-hour work day; avoiding unprotected heights, moving machinery, and open water; never climbing ladders, ropes or scaffolds; no more than frequently balancing, stooping, crouching, kneeling, or crawling; only occasionally climbing ramps and stairs; while restricted to a relatively clean work environment, with low levels of pollutants; and while performing simple, unskilled work, involving one, two, or three step instructions, not in close proximity to co-workers, and involving only minimal direct contact with the general public." (AR at 15.)

[3] As defined in the Dictionary of Occupational titles at 209.587-034, a marker "marks and attaches price tickets to articles of merchandise to record price and identifying information . . . ."

to give proper weight to the opinions of Plaintiff's treating physicians; (3) failing to develop a psychiatric/mental functioning questionnaire[4]; and (4) making findings of fact not supported by substantial evidence. (Doc. # 11 at 11.) Plaintiff additionally alleges that the ALJ erred by finding that Plaintiff did not meet the criteria for listing 12.04 or 12.06 in Step Three of the analysis,[5] and that the ALJ erred by concluding that the Plaintiff could complete simple unskilled work in Step Five. (Doc. # 13.)

## II. APPLICABLE LAW

**A. STANDARD OF REVIEW**

The record in this case is composed of the evidence that was considered by the ALJ.[6] This Court's review of the decision is limited to determining whether the ALJ's decision is supported by substantial evidence and whether the Commissioner, through the ALJ, applied the correct legal standards. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less

---

[4] In his Opening Brief, Plaintiff merely asserts that the ALJ erred by failing "to develop a psychiatric/mental functioning questionnaire." (Doc. # 11 at 11.) Plaintiff has not discussed this alleged error, and as such, the Court finds no basis on which to address, let alone reverse because of, this unsubstantiated argument.

[5] The listing for 12.04 affective disorders is: "[c]haracterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation." In the listing for 12.06 anxiety-related disorders, "anxiety is either the predominant disturbance or it is experienced if the individual attempts to master symptoms; for example, confronting the dreaded object or situation in a phobic disorder or resisting the obsessions or compulsions in obsessive compulsive disorders." 20 C.F.R. § 404, Subpart P, Appendix 1.

[6] Plaintiff also submitted to the Appeals Council evidence that was not before the ALJ at the time of her decision, which the Court addresses, *infra*, at fn. 12 & 13.

than a preponderance. *Id.* at 1084. In reviewing the record and the briefing submitted by counsel, the Court does not reexamine the issues *de novo*, *Sisco v. United States Department of Health and Human Services*, 10 F.3d 739, 741 (10th Cir. 1993), nor does it reweigh the evidence or substitute its judgment for that of the Commissioner, *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006). Thus, even when some evidence may have supported contrary findings, the Court "may not displace the agency's choice between two fairly conflicting views," even if the Court may have "made a different choice had the matter been before it de novo." *Oldham v. Astrue*, 509 F.3d 1254, 1257-58 (10th Cir. 2007).

**B.     EVALUATION OF DISABILITY**

The qualifications for disability insurance benefits under the Social Security Act are that the claimant meets the insured status requirements, is less than sixty-five years of age, and is under a "disability." *Flint v. Sullivan*, 951 F.2d 264, 267 (10th Cir. 1991). The Social Security Act defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d).

An individual's eligibility for Supplemental Security Income (SSI) payments each month is determined on the basis of the individual's income, resources, and other relevant characteristics. 42 U.S.C. § 1382(c)(1). In addition to being financially eligible,

the individual must file an application for SSI and be under a "disability" as defined in the Social Security Act.  42 U.S.C. § 1382.[7]

### III. ANALYSIS

In determining whether a claimant is disabled, the ALJ must consider the following five-step inquiry: (1) whether the claimant is currently employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling by meeting the requirements of a listing; (4) if the claimant does not have a conclusively disabling impairment, whether he can perform his past relevant work, and (5) whether the claimant is capable of performing any work in the national economy.  20 C.F.R. § 404.1520(a)(4).  The claimant bears the burden of establishing a disability at steps one through four.  *See, e.g.*, *Gonzales v. Astrue*, No. 11-cv-02344, 2012 WL 4356243, at *2 (D. Colo. Sept. 24, 2012) (unpublished).  If the claimant reaches step five, the burden then shifts to the Commissioner to show that "the claimant is capable of performing work in the national economy."  *Id.*

**A.   WHETHER THE ALJ ERRED BY FAILING TO APPLY THE SPECIAL TECHNIQUE FOR MENTAL IMPAIRMENTS SET FORTH AT 20 C.F.R. § 404.1520(a), AND ALSO WHETHER THE ALJ ERRED AT STEP 3**

Plaintiff alleges that the ALJ failed to apply the special technique for mental impairments as outlined in 20 C.F.R. § 404.1520(a) in Step 3 of her analysis.  (Doc.

---

[7]  Part 404 of the Code of Federal Regulations ("CFR") addresses claims for Disability Insurance Benefits under Title II of the Social Security Act.  That Part is paralleled by Part 416 of the CFR, which addresses claims for SSI pursuant to Title XVI of the Act.  Accordingly, citations to the CFR need only be to one of these Parts: here, Part 404.

# 11 at 14-16.) Specifically, Plaintiff asserts that the ALJ failed to make "findings and conclusions based on [Plaintiff's] history, examination and laboratory findings," and failed to include specific findings as to "the degree of limitation in each of the functional areas." (Doc. # 11 at 15.) Additionally, Plaintiff asserts that the ALJ erred in failing to find that he met the criteria for listing 12.04 or 12.06 in Step Three. (Doc. # 13 at 6.) For the reasons discussed below, the Court is unpersuaded.

The "special technique" for evaluating mental impairments requires that the ALJ rate Plaintiff's degree of mental limitation in four functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. 20 C.F.R. § 404.1520(a). For each of the first three, the ALJ is required to rate the degree of Plaintiff's limitation on a five point scale: (1) none; (2) mild; (3) moderate; (4) marked; or (5) extreme. *Id.* The ALJ must rate the degree of limitation for episodes of decompensation on a four point scale: (1) none; (2) one or two; (3) three; or (4) four or more. *Id.* Where the ALJ's rating is "none" or "mild" in the first three functional areas and "none" in the fourth area, the mental impairments are generally found to be non-severe. *Id.* If the ALJ's rating is greater in any of the four areas, the mental impairment is deemed to be severe. *Id.*

Step Three requires the ALJ to determine whether Plaintiff's severe impairments[8] meet or are medically equivalent to the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1 (the "listings"). 20 C.F.R. § 404.1520. In her analysis,

---

[8] In Step Two, as previously mentioned, the ALJ found Plaintiff's depression and PTSD to be severe mental impairments. (AR at 13.)

the ALJ correctly noted that "a marked limitation means more than moderate but less than extreme," and that to meet or be medically equal to the criteria of listings 12.04 or 12.06, a mental impairment must cause at least two 'marked' limitations, or one 'marked' limitation and 'repeated' episodes of decompensation.  (AR at 14-15.)

In applying the special technique at Step Three, the ALJ first recited a summation of the medical evidence.  (AR at 14-15).  She observed that the treatment notes of Dr. Scott McClure, Plaintiff's treating psychiatrist, discussed the effectiveness of medication but failed to "establish the existence of marked mental limitations."  (AR at 15.)  Dr. Michael Wilbourn, Plaintiff's treating psychologist, provided only a "summary of [treatment] observations."  *Id.*  Per a reduced fee agreement with Plaintiff, Dr. Wilbourn did not keep treatment notes.  (AR at 18.)  The ALJ stated that "without the ability to review and analyze [Dr. Wilbourn's] treatment observations," there was "insufficient support in his summarization for a finding that the claimant's mental impairments have resulted in marked limitations of functioning."[9]  (AR at 15.)   The ALJ found that "there [was] simply insufficient medical evidence to support that the [Plaintiff] experience[d] more than moderate limitations in any area of mental functioning," or "any extended episodes of decompensation."  *Id.*  Therefore, the ALJ concluded that because Plaintiff's "mental impairment [did] not cause at least two 'marked' limitations or one 'marked'

---

[9]  Plaintiff alleges that the ALJ erred by failing to give proper weight to Plaintiff's treating physicians.  (Doc. # 11 at 11-14.)  While this allegation, if found to be true, would be relevant to the ALJ's analysis here, as discussed in the text below, the Court determines that the ALJ did not err in her evaluation of the medical evidence and opinions in the record.  Therefore, the ALJ's conclusion at Step Three is not erroneous.

limitation and 'repeated' episodes of decompensation[,]" Plaintiff's mental impairment "does not meet or medically equal the criteria of listings 12.04 or 12.06." (AR at 14-15).

In the instant case, Plaintiff effectively asks the Court to replace the ALJ's finding with the opinions of Dr. Wilbourn and Dr. McClure to conclude that Plaintiff meets the criteria for listings 12.04 and 12.06 in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR at 20-21). But this the Court cannot do. As Defendant correctly states, "medical opinions must be considered by the ALJ in evaluating whether a claimant is disabled, but the final determination is left to [the] ALJ." (Doc. # 12 at 13.); *see* 20 C.F.R. §§ 404.1520, 404.1545-46; 404.1527; SSR 96-5p. Determination as to the ultimate issue of whether a claimant meets or equals a listing is reserved solely to the ALJ. *See* C.F.R. §§ 404.955, 404.881, 404.1527(e); SSR 96-5p. Here, the Court's review is limited to whether the ALJ's determination is supported by substantial evidence and whether the Commissioner, through the ALJ, applied the correct legal standards. *Wall*, 561 F.3d at 1052. The Court determines that the ALJ relied on substantial evidence in finding that Plaintiff did not meet the criteria for a listing, and that the ALJ complied with the applicable legal standards, including the requirements of the special technique for mental impairments. The ALJ complied with the special technique by addressing and rating Plaintiff's mental limitation for each of the four functional areas. (AR at 15.) Additionally, the ALJ reviewed the applicable medical evidence and discussed why she found that the evidence did not support a finding that Plaintiff met the criteria for listings 12.04 or 12.06. *Id.* Therefore, the Court concludes that the ALJ did not err at Step

Three in finding that Plaintiff's mental impairments did not meet the criteria for listings 12.04 or 12.06.

**B.   WHETHER THE ALJ ERRED BY FAILING TO GIVE PROPER WEIGHT TO THE OPINIONS OF PLAINTIFF'S TREATING PSYCHIATRIST AND PSYCHOLOGIST, THEREBY FORMULATING AN INACCURATE RFC**

Plaintiff next argues that the RFC,[10] which the ALJ formulated, was not based on substantial evidence and that the ALJ did not apply the correct legal standards in determining it. (Doc. # 11 at 17-18.) Specifically, Plaintiff asserts that the ALJ erred in its assessment of the medical evidence in the record and that the VE's testimony was in response to erroneous hypotheticals. (Doc. # 11 at 11-14, 16-20.)

According to the "treating physician rule," the Commissioner will generally "give more weight to medical opinions from treating sources than those from non-treating sources." *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004); *see also* 20 C.F.R. § 404.1527(d)(2). In fact, "A treating physician's opinion must be given substantial weight unless good cause is shown to disregard it." *Goatcher v. U.S. Dep't of Health & Human Servs.*, 52 F.3d 288, 289-90 (10th Cir. 1995). A treating physician's opinion is accorded this weight because of the unique perspective he has to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations. *See Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004).

---

[10]   In relevant part, as stated above, Plaintiff's RFC is that he can perform "simple, unskilled work, involving one, two, or three step instructions, not in close proximity to co-workers, and involving only minimal direct contact with the general public. (AR at 15.)

"In deciding how much weight to give a treating source opinion, an ALJ must first determine whether the opinion qualifies for 'controlling weight.'" *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). To do so, the ALJ:

> must first consider whether the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques. If the answer to this question is 'no,' then the inquiry at this stage is complete. If the ALJ finds that the opinion is well-supported, he must then confirm that the opinion is consistent with other substantial evidence in the record. [. . .] [I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight.

*Id.* (internal quotation marks and citations omitted).

Even if a treating physician's opinion is not entitled to controlling weight, however, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." *Id.* Those factors are:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001); 20 C.F.R. § 404.1527(d). Under Tenth Circuit caselaw, "an ALJ must give good reasons for the weight assigned to a treating physician's opinion that are sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical

opinion and the reason for that weight." Langley, 373 F.3d at 1119 (internal quotation marks and citations omitted).[11]

The Court will examine, in turn, the ALJ's analysis of the medical opinions tendered by Plaintiff's treating psychiatrist and psychologist in this case.

1. <u>Treating Psychiatrist Dr. McClure</u>

Plaintiff's treating psychiatrist, Dr. McClure, submitted medical records from September 14, 2005, through February 9, 2010.[12]  (AR at 424; 490-93; 511-16.) Dr. McClure opined in March 2006 that Plaintiff's depression was "under good control." (AR at 397.)  He noted in February 2007 that Plaintiff's medications were having a "so so" effect and that Plaintiff was tired from stress. Id.  In May 2007, Dr. McClure observed that Plaintiff was experiencing only "minimal" symptoms of depression and anxiety. Id.  Dr. McClure later observed in September and December 2007 that Plaintiff had not become depressed on the medications he was taking at the time. (AR at 396, 424.)  Dr. McClure's treatment notes from March through August 2009 reflect that Plaintiff made comments such as that he was "doing well," "feels good," and "mood

---

[11] For non-treating physicians, the ALJ is again required to consider the six factors addressed above.  See 20 C.F.R. § 404.1527(d).

[12] Subsequent to the ALJ's Order, and therefore not considered in the ALJ's decision, Dr. McClure submitted a Mental Impairment Questionnaire in which he stated, in part, that Plaintiff had symptoms of depression and was "unable to meet competitive standards in" or had "no useful ability to function" in many areas of work-related mental functioning. (AR at 511-516.)  He noted in this report that Plaintiff was "too aggressive" at times, was inconsistent, and was too depressed. Id.  Dr. McClure also noted that Plaintiff would miss more than four days of work a month. Id.  The Appeals Council reviewed this report and found that it did not serve as a basis for changing the ALJ's decision. (AR at 1-5.)  The Court agrees for the reasons discussed in fn. 13, infra.

stable." (AR at 491.)  Later, in November 2009, Dr. McClure's notes state that Plaintiff was experiencing some depression with low energy but that he had no symptoms of suicidal or homicidal ideation.  (AR at 492.)  At this same time, Plaintiff told Dr. McClure that he had begun to seek work.  *Id.*

Plaintiff claims that the ALJ erred by failing to give a reason "as to why Dr. McClure's opinions have not been given controlling weight as he is the treating psychiatrist."[13]  (Doc. # 11 at 13.)  Plaintiff further asserts that the ALJ failed to give good cause to disregard the consistent opinions of Dr. McClure and Dr. Wilbourn. (Doc. # 11 at 12.)  Yet, despite Plaintiff's assertion, the ALJ never stated that Dr. McClure's opinions were given anything less than controlling weight.  In fact, the ALJ expressly relied on Dr. McClure's treatment notes and opinions in finding the conclusions provided by Dr. Wilbourn to be contradictory and unreliable.  (AR at 18-19.) Therefore, the Court concludes that the ALJ correctly weighed and considered Dr. McClure's treatment notes and opinions in determining Plaintiff's RFC.

2.  <u>Treating Psychologist Dr. Wilbourn</u>

Plaintiff's treating psychologist, Dr. Wilbourn, had an agreement with Plaintiff that in exchange for a reduced fee, Dr. Wilbourn would not "keep an extensive file." (AR at 468-69.)  As a result, Dr. Wilbourn was not able to provide any contemporaneous

---

[13] In his claim that the ALJ did not give controlling weight to Dr. McClure's opinions, Plaintiff seems to be referring to the questionnaire that was submitted to the Appeals Council subsequent to the issuance of the ALJ's decision.  For the same reasons discussed above, the Court finds that the Appeals Council did not err in finding that this new information would not have changed the ALJ's determination in this case.  The questionnaire stated essentially the same conclusions as Dr. Wilbourn's questionnaire, which the ALJ found to be unsupported and contradicted by the other medical evidence in the record.

treatment notes or observations for the ALJ's review.  In lieu of treatment notes, Dr. Wilbourn submitted a two page treatment summary dated March 1, 2010.  (AR at 468-69.)  Dr. Wilbourn's summary states that Plaintiff "is not able to work in his current condition, and may never be able to."  (AR at 469.)  Dr. Wilbourn additionally opines that Plaintiff "functions in a way that suggests he could not handle more than an hour or two of work." *Id.*  He notes that Plaintiff's "depression continues to persist" and that "[m]ost of his PTSD symptoms are in remission with the exception of the anger." *Id.*  Dr. Wilbourn's final conclusion is that Plaintiff "has reached his maximum mental health improvement." *Id.*  In addition to the treatment summary, Dr. Wilbourn answered a Mental Impairment Questionnaire on March 16, 2010.  (AR at 494-98.)  In the questionnaire, Dr. Wilbourn checked boxes noting his opinion that Plaintiff could not, among other things, remember work-like procedures, maintain attention for two hour segments of time, or deal with normal work stress. *Id.*  Dr. Wilbourn's ultimate conclusion was that Plaintiff would likely be unable to work in any capacity. *Id.*

The ALJ explicitly cited two factors provided in 20 C.F.R. § 404.1527(d) for giving "no weight" to Dr. Wilbourn's opinions: (1) he had not provided treatment notes or medical evidence to support his conclusions; and (2) "his opinion [was] not well supported by the other evidence of record."  (AR at 19.)  Specifically, the ALJ stated that while "the regulations require" that she have medical data, there were not "any psychiatric evaluations" provided.  (AR at 59.)  Additionally, as the ALJ noted, "a summary years after the fact isn't the same thing as seeing the treatment notes,"

and a questionnaire of the type submitted by Dr. Wilbourn, without reports or notes, is not substantial evidence. (AR at 60.); *see e.g.*, *Frey v. Bowen*, 816 F.2d 508, 515 (10th Cir. 1987). In her Order, the ALJ satisfied the requirement of "confirm[ing] that the opinion is consistent [or inconsistent] with other substantial evidence in the record." *Watkins*, 350 F.3d at 1300. In two full paragraphs of analysis, the ALJ discusses the contrary medical findings, including those of Dr. McClure as previously discussed. (AR at 18.) For example, while Dr. Wilbourn's summary stated that Plaintiff's depression "continues to persist" and that he reached his "maximum mental health improvement," Dr. McClure's contemporaneous treatment notes from several occasions stated that Plaintiff's depression was at many times under control. (AR at 469, 396, 424.) This opinion was shared by Plaintiff's treating cardiologist, Dr. Russell A. Linsky, who opined, in December 2008, that Plaintiff exhibited no depression, anxiety, or agitation. (AR at 484.)

While there were some opinions and statements that were consistent with Dr. Wilbourn's, the ALJ did not find them to be credible or substantial enough to rely on them. For example, in response to questions posed by his attorney, Plaintiff testified that he had difficulty understanding television programs or reading material, that he felt sad, angry, isolated and withdrawn, and that he would not be able to work in any environment in which he would only get three breaks a day. (AR at 63-69.) The ALJ noted that she did not find Plaintiff's assertions to be credible based in part on conflicting record evidence and in part on the fact that while Plaintiff was alleging total

disability to the Social Security Administration, he had been presenting himself as willing and able to work to a State government agency and had received unemployment benefits for a period of time.  (AR at 18.)

Further, an ALJ is not required to "discuss all the § 404.1527(d) factors for each of the medical opinions before him," *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007), and in the instant case the reasons given by the ALJ are "sufficiently specific to make clear . . . the reason" for the weight the ALJ gave to Dr. Wilbourn's opinions.  *See Langley*, 373 F.3d at 1119.  While the ALJ did not explicitly address all the factors, she found that Dr. Wilbourn's opinions were contradicted by the other record evidence and were unsupported by medical evidence.  (AR at 19.)  If an ALJ rejects a treating source's opinion entirely, the ALJ must give specific, legitimate reasons for doing so.  *Watkins*, 350 F.3d at 1301.  In its limited reviewing capacity, this Court finds that the ALJ's reasons for disregarding Dr. Wilbourn's opinions are both legitimate and sufficiently specific.

After reviewing the record evidence, the ALJ formulated Plaintiff's RFC, concluding that it is "reasonable that any individual who experiences ongoing symptoms of depression and PTSD would be able to perform unskilled work, while avoiding prolonged contact with co-workers and the general public" and that there is "insufficient evidentiary support for a finding of more extensive medical limitations."  (AR at 19.) Plaintiff asserts that the ALJ erred by replacing her own opinion for that of the medical opinions discussed above.  However, as already mentioned, the Court finds that the

ALJ appropriately reviewed and weighed the medical evidence in coming to her conclusion. (AR at 16-19.) Additionally, the RFC assessment is solely reserved for the ALJ, not a physician. 20 C.F.R. §§ 404.1545-46; SSR 96-8p; s*ee Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004). The ALJ considered and folded into the RFC assessment the medical opinions supported by substantial evidence, including those that suggested Plaintiff not have direct interaction with co-workers or the general public. (AR at 16-19.) The ALJ's RFC determination that Plaintiff can perform unskilled work,[14] not in close proximity to co-workers or the general public, is supported by substantial evidence and is based on correct legal standards; therefore the Court does not find a basis for reversal in Step Four.

**C.   WHETHER THE ALJ ERRED BY CREATING INACCURATE HYPOTHETICALS GIVEN TO THE VE IN STEP FIVE**

In Step Five, the ALJ posed hypotheticals to a VE to assess whether there was work in the national economy that Plaintiff could perform. 20 C.F.R. § 404.1520(v). These hypotheticals were based on Plaintiff's above-described RFC, age, education, and work experience. (AR at 72-73.)

In the ordinary course, if a VE finds that, based on such hypotheticals, there is no work that the plaintiff could perform, the ALJ then makes a finding that the plaintiff is disabled. 20 C.F.R. § 404.1520(v). However, if there are jobs that a person with the

---

[14]   Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time by someone with no work skills or no work experience. 20 C.F.R. § 404.1568(a); SSR 83-10.

plaintiff's limitations could perform, then the correct determination is that the plaintiff is not disabled. *Id.*

Here, Plaintiff alleges that the ALJ posed incomplete and inaccurate hypotheticals to the VE, resulting in a finding that there are jobs that Plaintiff could perform.  (Doc. # 11 at 17.)  Plaintiff states that for a VE's opinion to constitute substantial evidence, the VE must consider all of Plaintiff's impairments.  *Id.*  Plaintiff alleges that by failing to incorporate his asserted "inability to maintain attention for 2-hour segments, maintain regular attendance, complete a normal work day or work week without interruptions from psychologically-based symptoms, [or] perform on a consistent pace without an unreasonable number and length of rest periods," the ALJ's hypotheticals did not reflect the extent and nature of Plaintiff's restrictions.  *Id.* at 18.  Plaintiff turns to his own testimony and the records of Dr. McClure and Dr. Wilbourn to support these impairments.  As previously discussed, though, the Court determines that the ALJ correctly relied on substantial evidence in her RFC assessment that Plaintiff can perform simple, unskilled work, with limitations such that he not be in close proximity to co-workers or have direct contact with the general public.  The Court discerns no error in the ALJ's decision to include in the RFC and in the VE's hypotheticals the limitations supported by substantial evidence, while excluding others that were not so supported.

In the present case, the ALJ asked the VE whether jobs exist in the national economy for an individual with Plaintiff's age, education, work experience, and RFC.

(AR at 20.)  In response to the ALJ's hypotheticals, the VE first concluded that Plaintiff could not return to his past work as it exceeded the restrictions included in the RFC. (AR at 72.)  Next, the ALJ asked the VE if there was any work in the national economy that someone with Plaintiff's RFC, age, education, and work experience could perform. *Id.*  The VE concluded that based on all of the factors, there was unskilled work in the national economy that Plaintiff could perform with appropriate restrictions – specifically, the jobs of mail clerk, marker, and garment sorter.  (AR at 74.)  The ALJ then asked the VE if an individual with the same RFC, age, work experience and education, but with further limitations in the ability to "sustain concentration, persistence, and pace necessary to consistently fulfill work for eight hours a day, five days a week, in order to complete a 40 hour work week" could find work.  (AR at 75.)  The VE stated that there would not be work for such an individual.  *Id.*

       The Court determines that the ALJ, in the first hypothetical, properly presented the Plaintiff's RFC, age, education, and work experience to allow the VE to give a response supported by substantial evidence.  In addition, the Court notes that the ALJ went so far as to include alleged impairments not supported by substantial evidence in the second hypothetical.  (AR at 75.)  Consistent with the VE's finding, the ALJ determined that there was simple and unskilled work in the national economy that Plaintiff could perform.  Therefore, following the legal standard in Step Five, the ALJ correctly found that Plaintiff was not disabled.

Accordingly, the Court determines that the ALJ's findings in weighing the medical evidence to find that Plaintiff's mental impairments were severe, but that they did not meet the requirements for a listing, and that Plaintiff, based on his RFC assessment, could perform simple and unskilled work available in the national economy, were supported by substantial evidence and free from legal error.

## IV.  **CONCLUSION**

For the foregoing reasons, it is ORDERED that the Commissioner's decision be AFFIRMED.  Each party shall bear its own costs and attorney's fees.

DATED:  September   28  , 2012

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge